kaw

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05-40157-01-JAR** |
| | ) | |
| **ALBERT LAWRENCE VAUGHAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Before the Court is the Government's Motion in Limine (Doc. 40) and defendant Albert Lawrence Vaughan's Motion in Limine Regarding Non-Eyewitness Testimony (Doc. 43). The court has reviewed the parties' briefs and is ready to rule. For the reasons explained in detail below, the government's motion is granted in part and denied in part; and the defendant's motion is denied.

**Background**

Defendant Albert Lawrence Vaughan is charged with bank robbery in violation of 18 U.S.C. § 2113(d) and assault by placing the life of another in jeopardy in violation of 18 U.S.C. § 2113(a). On October 15, 2004, the First Bank of Kansas in Salina, Kansas was robbed by a young, white male believed to be between the ages of twenty-five and twenty-eight years old. His face was partially covered by a baseball cap and another cap, which was placed over his nose and mouth. Four bank tellers were present at the time of the robbery. The robber approached one of the tellers ("first teller") standing immediately behind the counter and demanded money. When she failed to respond, he pulled out a handgun and pointed it at her face. Another teller

standing nearby ("second teller"), directed the first teller to give the robber the money in her cash drawer. As the second teller watched the bank robber, she noticed that the cap covering his nose and mouth would occasionally fall to reveal his face. The robber reportedly fired his gun at a cabinet against the wall behind these two tellers. He then directed the other two tellers to empty the cash drawers near the drive-through window. As the money was brought to the counter, the robber stuffed the cash down the front of his pants. When the drawers were emptied, he left the bank on a bicycle. Defendant was arrested eight months later, on June 29, 2005, in Las Vegas, Nevada.

At trial, the government intends to offer eyewitness testimony of the second teller and identification testimony from the defendant's ex-girlfriend, Ms. Greenville, with whom he lived during 2005. Defendant's motion to suppress the identification of the second teller was denied on February 8, 2008.[1]

**A. Testimony of Michael R. Leippe, Ph.D.**

The defendant has proffered Doctor Michael Leippe's testimony.[2] Lieppe would testify that there are "three general points that can be made with considerable scientific confidence about eyewitness testimony." These points are that: (1) eyewitness identification in criminal cases is different from and inferior to the process of recognizing and identifying one's friends and acquaintances; (2) an eyewitness's confidence in her memory has little relationship to the accuracy of the eyewitness's identification; and (3) in evaluating eyewitness testimony, the fact finder should consider a number of conditions that may either facilitate or inhibit accuracy, such

[1]Doc. 22

[2]Doc. 42 Exh. 1

as lighting, distance, the duration of the encounter, and the attendant level of stress, fear, and anxiety during the encounter.[3]

The government asserts that this proposed expert testimony should not be admitted because it neither qualifies as scientific knowledge nor assists the jury in its determination. The government further argues that the proposed testimony invades the province of the jury to make credibility determinations and would only lead to confusion of the issues before the Court. The defendant counters that if the testimony of the expert witness is not admitted, his Sixth Amendment right to present a defense would be violated.

Under Fed. R. Evid. 702, an expert may testify in the form of an opinion or otherwise if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The witness must qualify as an "expert by knowledge, skill, experience, training, or education."[4] "Rule 702 'imposes a special gatekeeping obligation on the trial judge to ensure that an opinion offered by an expert is reliable'"[5] and relevant.[6]

In determining the reliability of an expert's proposed testimony, the court must generally look to the *Daubert* factors, which include: (1) whether the expert's theory can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known degree of error and standards controlling the technique's operation; and (4) whether the theory is generally

---

[3]Doc. 42 Exh. 1

[4]FED. R. EVID. 702.

[5]*United States v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000), *cert. denied*, 124 S. Ct. 2403 (2004) (citing *United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999)).

[6]*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

accepted within the scientific community.[7] Evaluating some types of expert testimony, however, does not fit neatly within the *Daubert* framework. In those instances, the Supreme Court advises that *Daubert* is merely a tool to be used flexibly to determine the reliability of proposed testimony.[8] Therefore, whether expert testimony is reliable is within the broad discretion of the trial court, which must determine the reliability of the proposed testimony in "'light of the particular facts and circumstances of the particular case.'"[9]

Leippe's "three general points" about eyewitness testimony are based on information that is duly written and talked about in his field.[10] In fact, so widely are the terms used in Leippe's report that they appear in cases all across the country,[11] with some courts even exclaiming that the "'science of eye witness perception has achieved the level of exactness, methodology and reliability of any psychological research.'"[12] Leippe intends to testify that because of how the mind works in creating memories, errors in identification may happen along the way. Additionally, Leippe intends to testify to theories passed upon by other courts, such as weapons

---

[7] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993).

[8] *Kumho Tire Co.*, 526 U.S. at 153.

[9] *Velarde*, 214 F.3d at 1208 (quoting *Kumho Tire Co.*, 526 U.S. at 158).

[10] *See* Graham M. Dacies, *A Weapon Focus Effect in Children*, 14 PSYCHOL., CRIME & L., 19 (2008); Henry F. Fradella, *Why Judges Should Admit Expert Testimony on the Unreliability of Eyewitness Testimony*, 2 FED. CTS. L. REV., 1 (2007); Richard A. Wise, et. al., *A Tripartite Solution to Eyewitness Error*, 97 J. OF CRIM. L. & CRIMINOLOGY, 807 (Spring 2007); Keri L. Pickel, *Do Weapons Automatically Capture Attention?*, 20 APPLIED COGNITIVE PSYCHOL., 871 (2006); Tim Valentine, *Characteristics of Eyewitness Identification that Predict the Outcome of Real Lineups*, 17 APPLIED COGNITIVE PSYCHOL., 969 (2003).

[11] *See United States v. Brownlee*, 454 F.3d 131 (3d Cir. 2006); *United States v. Langan*, 263 F.3d 613 (6th Cir. 2001); *United States v. Mathis*, 264 F.3d 321 (3d Cir. 2001); *United States v. Norwood*, 939 F. Supp. 1132 (D. N.J. 1996).

[12] *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000) (quoting *United States v. Smith*, 736 F.2d 1103, 1107 (6th Cir. 1984)).

focus, confidence versus accuracy of eye witnesses, and the effects of stress and fear on developing memories. Leippe offers a number of resources that are accepted in the field of psychology to detail the theories on which he relies. Based on this, the Court is convinced that the information Leippe intends to offer is based on scientific knowledge.

In the past, most courts concluded that eye witness identification expert testimony was not helpful to the jury because the information offered smacked of common knowledge.[13] Other courts also reasoned that rigorous cross-examination was enough to filter out the discrepancies in any eye witness testimony.[14] Still other courts reasoned that the court could offer jury instructions to counter the jury's perception that eye witness testimony should be accepted without much question.[15] When determining whether this kind of testimony helps the trier of fact, the court is given broad discretion and must make its determination based on the facts of the particular case.[16]

In this case, the government intends to offer eye witness testimony of the second teller as well as the non-eye witness identification testimony of defendant's ex-girlfriend, to show that defendant was the person who robbed the bank on that day. In fact, the government's evidence is primarily the testimony of the second teller and the defendant's ex-girlfriend. Eye witness

---

[13]*See Langan*, 263 F.3d at 621 (citing *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)); *see also United States v. Smith*, 156 F.3d 1046, 1053 (10th Cir. 1998); *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993); *United States v. Hudson*, 884 F.2d 1016, 1024 (7th Cir. 1989).

[14]*Smithers*, 212 F.3d at 311 (citing *United States v. Thevis*, 665 F.2d 616, 641 (5th Cir. 1982)).

[15]*United States v. Burros*, 934 F. Supp. 525, 527 (E.D. N.Y. 1996) (citing *United States v. Rincon*, 28 F.3d 921, 925-26 (9th Cir. 1994)).

[16]*United States v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999)).

testimony is one of the most devastating sorts of evidence.[17] Of course this testimony may be subject to rigorous cross-examination. And, this Court can certainly provide the jury with instructions concerning how to evaluate the testimony of eye witnesses. But Leippe's testimony may provide valuable assistance to the jury in identifying factors that affect an eyewitness's perception and memory, and in understanding how memories are developed in the presence of a weapon and with the accompanying attendant stress and fear.

On the other hand, the government's objection under Rule 403 is well taken. The government argues that Leippe's proposed testimony fails the balancing test of Rule 403 because it may confuse the jury. The issue here is the danger of confusion where there is an aura of special reliability placed on the expert witness. The Court agrees that much of the proposed testimony goes beyond the bounds of proper expert testimony, and is essentially an opinion on credibility, clearly invading the province of the jury. While the Court will allow Leippe to testify to the body of research concerning an eyewitness's perception and memory, and the effect of fear, stress, and the presence of a weapon, the Court will not allow Leippe to opine about the application of those factors to these witnesses.

Thus, the Court will not allow Leippe to testify to a number of subjects discussed in his expert report: that exposure to the perpetrator in this case was brief and of poor quality; the witnesses experienced extreme fear and stress which is not conducive to developing an accurate memory of the event; the witnesses very likely experienced "weapon focus" detracting from their focus on the appearance of the robber; the age description by the witness was discrepant with the defendant's age; and the accuracy of the eyewitness is questionable. Nor will the Court allow

---

[17] *See United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006); *Langan*, 263 F.3d at 621 (citations omitted); *Smithers*, 212 F.3d at 312 n.1.

Leippe to quantify or estimate the percentage of times that eyewitness identifications are inaccurate. The jury will be assisted by an understanding of the factors that affect perception and memory; but Leippe will not be allowed to opine about how the presence of such factors, nor how such factors affected the perception or memory of the witnesses in *this* case. This invades the province of the jury, and is more prejudicial than probative.

Nor will the Court allow Leippe to testify about another opinion he offered in his report: that the identification by the second teller was based on a suggestive photo lineup. This testimony invades the province of the Court and constitutes a legal opinion.

**B. Non-Eyewitness Testimony**

Rule 701 of the Fed. R. Evid. governs the admissibility of lay opinion testimony. The Rule provides that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[18]

Therefore, the identification testimony of defendant's ex-girlfriend is admissible if it is rationally based on her perception, and if it is helpful to a clear understanding of a fact in issue.[19] The trial court has broad discretion in this area.[20]

Defendant argues any identification by his ex-girlfriend based on her viewing the

---

[18]FED. R. EVID. 701.

[19]*United States v. Allen*, 787 F.2d 933, 937 (4th Cir. 1986), *rev'd on other grounds*, 479 U.S. 1077 (1987).

[20]*United States v. Borrelli*, 621 F.2d 1092, 1095 (10th Cir. 1980).

photographs taken from the bank surveillance cameras is inadmissible because it invades the jury's province, because they can look at the same photographs and make their own determination. Defendant further argues that the evidence is unreliable because the agents suggested to the witness who they thought was in the picture by letting Ms. Greenville know that defendant was arrested for bank robbery.

Defendant's arguments are not persuasive. First, Ms. Greenville already knew that defendant had been arrested when she was asked to identify the person in the photographs. Her identification was not tainted by suggestive action by law enforcement officers. Moreover, Greenville viewed four different photographs and recognized each as defendant. She stated that she recognized defendant's posture and goatee, in addition to the clothing he was wearing.

Furthermore, Greenville's testimony will be helpful to the jury. The person depicted in the photographs is wearing a ball cap and his face is partially disguised. Indeed, there are a number of cases on point, that allow identification testimony from lay witnesses under these circumstances. For example, in *United States v. Borrelli*,[21] Borrelli argued that testimony from his stepfather identifying him as the bank robber invaded the province of the jury, as the photographs were available for the jury to see.[22] The court reasoned that Borrelli's stepfather was in a better position than the jury to identify defendant from the photographs because he had independent knowledge of Borrelli's appearance before the crime.[23] Similarly, in *United States*

[21] 621 F.2d 1092 (10th Cir. 1980).

[22] *Id.* at 1095.

[23] *Id.*

*v. Contreras*,[24] Contreras argued that allowing his probation officer to testify that she recognized him from the photographs taken from the surveillance cameras invaded the province of the jury.[25] The court disagreed, reasoning that a "witness's identification testimony satisfies Rule 701's second requirement if 'there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than the jury . . . .'"[26] The court further provided that the witness's prior familiarity with the defendant's appearance is the most critical factor in making such a determination.[27]

Here, Greenville's prior contacts with defendant makes her identification helpful to the jury. Greenville has known the defendant since 2002 and lived with defendant for over seven months in 2005. Thus, Greenville was familiar with defendant's appearance in October 2004, when he is alleged to have robbed the bank. When shown the photographs from the surveillance cameras, Greenville stated that "there was no question in my mind it's him."[28] As such, defendant's motion to prevent the government from offering Ms. Greenville's testimony is denied.

**IT IS THEREFORE ORDERED THAT** the Government's Motion in Limine (Doc. 40) is Granted in Part and Denied in Part, and Defendant's Motion Regarding Non-eyewitness

---

[24]536 F.3d 1167 (10th Cir. 2008).

[25]*Id.* at 1170.

[26]*Id.* (quoting *United States v. Allen*, 787 F.2d 933, 936 (4th Cir. 1986)).

[27]*Id.*

[28]Defendant also argues that the evidence would only be helpful if there was a change in appearance before trial, but that is not a necessary factor in the admission of lay witness identification testimony. *See Id.* at 1171. Additionally, Greenville's testimony is reliable because of her familiarity with defendant and because of her certainty in identifying defendant.

Testimony (Doc. 43) is Denied.

**IT IS SO ORDERED.**

Dated this 17th day of October 2008.

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE